**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3617-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAYSON T. EVANS,

    Defendant-Appellant.

_____

Submitted April 2, 2025 – Decided April 22, 2025

Before Judges Mayer and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-09-1139.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Samuel Carrigan, Assistant Deputy Public Defender, of counsel and on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Kimberly Diaz, law student, appearing pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

Defendant Jayson T. Evans appeals from a June 26, 2023 judgment of conviction after a jury convicted him of aggravated assault, theft of movable property, and weapons offenses. Alternatively, he appeals the sentence imposed. We affirm.

We recite the facts limited to the issues on appeal, focusing on the curative instruction after the State's closing argument and the sentence.

In 2021, a grand jury indicted defendant on the following charges: first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree theft of movable property, N.J.S.A. 2C:20-3(a). A jury heard testimony over five non-consecutive days beginning April 18, 2023. The State proffered testimony and evidence that defendant stabbed the victim with a knife during a dispute and then fled the scene with the victim's car and other personal property.

On the first day of trial, the judge instructed the jury:

> The defendant on trial is presumed innocent and unless
> each and every essential element of the offenses

charged are proved beyond a reasonable doubt, then the defendant must be found not guilty of that charge.

The burden of proving each element of the charges beyond a reasonable doubt rests upon the [S]tate and that burden never shifts to the defendant. It is not the obligation or the duty of the defendant in a criminal case to prove his innocence or offer any proof relating to his innocence.

The prosecution must prove its case by more than a mere preponderance of the evidence, yet not necessarily to an absolute certainty.

The [S]tate has the burden of proving the defendant guilty beyond a reasonable doubt.

At trial, defendant testified in his own defense. On cross-examination, the prosecutor asked if defendant had any video recordings of his altercation with the victim. Defendant replied he "had plenty of videos." When asked why he did not provide the videos to the police, defendant testified:

Well, I was upset at the time I was arrested. I've never been arrested in my life. I knew showing them the[] videos I was not getting out of that. I'm not, so I was like I'll show the judge the videos, but to me I didn't feel the need to show the detectives the videos.

During summation, the prosecutor told the jury that defendant "sa[id] he ha[d] video of the incident, but he didn't want to provide it. And defense counsel . . . said the detective should have gotten a search warrant to go and hunt down these videos, but the defendant elected not to provide them, if these videos even

exist."  After the prosecutor's summation, defense counsel told the judge that he "want[ed] to put a couple of objections on the record," specifically "the burden shifting when it came to the . . . cell phone" videos of the altercation.

The judge asked the prosecutor to respond to defense counsel's objection regarding the cellphone videos.  The following exchange occurred:

> [PROSECUTOR]:  Your Honor, the reference to the cell phone was in response to [defense counsel's] comments about why did the officers not get the search warrant.  It was not a comment on the burden shifting, it wasn't saying that the defendant had an obligation to present any evidence.
>
> [JUDGE]:  Yeah, but you told them that they didn't, and . . . he doesn't have any obligation to prove his innocence.  There's an issue with that.  I'm going to have to give . . . a curative instruction on that.

The judge immediately instructed the jury regarding the prosecutor's comment implying the burden shifted to defendant to produce the cellphone videos.  The judge stated:

> Ladies and gentlemen, there's one thing that I just want to remind you of, there's a part of the prosecutor's summation dealing with the issue of the defendant's cell phone, and turning over this video.  I just want to remind all of you that the defendant is presumed to be innocent, he does not have to prove his innocence.  So, there cannot be a burden shift, so to speak, meaning that –that he has to prove his innocence under the circumstances.

A-3617-22

It's the [S]tate's job to prove the case beyond a reasonable doubt. Defendant never has to say a single word.

So, while you've heard testimony about the phone, you can consider that phone for whatever purpose that you decide as a part of your deliberations that you feel is appropriate, but I am telling you that you are not allowed to, as a part of this, to burden shift saying, well, the defendant should have done this. That is never going to be something that can enter your mind. It is–he explained to you what he recalled happened. It's your decision to decide the credibility of that testimony. You are also to consider . . . the statements that he gave to the police, but because someone gives those statements does not mean that then they have other things they have to prove. You decide what you believe and what you don't believe.

Does everybody understand . . . no burden shifting. Everybody understands. Everyone is shaking their head. Good.

After closing arguments, the jury left the courtroom and the judge asked whether counsel had "anything else that [they] wanted to put on the record?" Neither counsel had anything further for the record.

In prefacing his jury instructions, the judge told the jurors "to apply the law as I give it to you under the circumstances not based upon what anyone else says, if it's . . . in contradiction to what I say. All right?" The judge then explained the applicable law in a criminal case, including the burden of proof. He instructed:

The defendant on trial is presumed to be innocent[,] and unless each and every essential element of the offense charged is proved beyond a reasonable doubt[,] defendant must be found not guilty of that particular charge.

The burden of proving each element of a charge beyond a reasonable doubt rests upon the [S]tate and that burden never shifts to the defendant. The defendant in a criminal case has no obligation or duty to prove his innocence or offer any proof relating to his innocence.

The prosecution must prove its case by more than a mere preponderance of the evidence yet not necessarily to an absolute certainty.

The [S]tate has the burden of proving the defendant's guilt beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is necessary to prove only that a fact is more likely true than not true. In criminal cases, the [S]tate's proof must be more powerful than that. It must be beyond a reasonable doubt.

A reasonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you have given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself, or from a lack of evidence. It is a doubt that a reasonable person hearing the same evidence would have.

Proof beyond a reasonable doubt is proof, for example, that leaves you firmly convinced of the defendant's guilt. As I told you in the beginning, we know very few things in life with absolute certainty. It

A-3617-22

is not the [S]tate's job to prove this case beyond any and all possible doubt. If you are firmly convinced of the defendant's guilt on a particular charge[,] then you would find him guilty on that charge. If, on the other hand, you are not firmly convinced of the defendant's guilt on a particular charge, you would find him not guilty on that particular charge.

The judge repeated the burden of proof later when discussing inferences. He instructed the jury:

If you draw an inference[,] you should weigh it in connection with all the other evidence in the case keeping in mind that the burden of proof is upon the [S]tate to prove all of the elements of the crime beyond a reasonable doubt.

. . . .

[I]f you find the inference[,] you should weigh it in connection with all of the other evidence keeping in mind that the [S]tate must prove defendant's guilt beyond a reasonable doubt, and that the inference does not shift the burden of proof to the defendant to prove his innocence.

After deliberating for less than two hours, the jury acquitted defendant of armed robbery and attempted murder, but convicted defendant of the remaining charges.

The judge sentenced defendant on June 22, 2023. The State requested a nine-year prison term. At the sentencing hearing, the prosecutor emphasized the victim was "permanently disabled as a result of [defendant's] conduct." After

reading the victim's statement in open court, the prosecutor asked the judge to "impose that nine[-]year sentence in light of the devastating impact that this had had on [the victim] and the truly heinous nature of what [defendant] did in this case."

Defense counsel noted defendant's good character and asked the judge to "consider several mitigating factors and impose a three[-]year [No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA)] sentence, which would be the lowest sentence in the third degree." Defendant also spoke. He told the judge he felt he was "in danger" during the fight with the victim but acknowledged he "messed up by not calling the police." Defendant admitted not calling the police "was the wrong decision," but said he "was intoxicated" and "wasn't thinking 100 percent clear on what could have happened."

Prior to sentencing, the judge noted "there [were] good things about [defendant], there's no question." However, the judge stated his obligation "to sentence the person who is in front of [him]." The judge reminded defendant that his version of the altercation with the victim "was rejected by [the] jury."

At sentencing, the judge considered: defendant's age, twenty-seven years old as of the hearing date; high school graduation status; service in the Navy with an honorable discharge; attendance at two semesters of college; and

completion of technical school for his welder's certification. The judge further noted defendant was single with no children and has a mother and brother who lived in Georgia. Additionally, the judge explained defendant previously worked for a tree service company and as a welder.

Having presided at defendant's trial, the judge summarized the facts of the case. Based on the evidence adduced at trial, the judge explained knives were involved in the altercation between defendant and the victim, and the victim suffered a severe stab wound to his neck. The judge rejected defendant's testimony that the victim's wound was self-inflicted. The judge acknowledged the victim and defendant were likely intoxicated but "[t]his was an assault that went too far," resulting in the victim suffering significant injuries.

The judge then considered the various aggravating and mitigating factors. He found aggravating factors two, three, nine, and thirteen applied. See N.J.S.A. 2C:44-1(a)(2), (3), (9), and (13). Regarding aggravating factor two (gravity and seriousness of harm inflicted), the judge explained the "harm to the victim was in excess of a single serious injury," because it included an emotional injury as well as physical injury. Because "the impact of these injuries has had a severe effect on the victim," the judge gave aggravating factor two significant weight.

9

Regarding aggravating factor three (risk of re-offense), the judge noted "[t]o the extent that [defendant] has not committed another offense, I think that that bodes well for the defendant." However, the judge noted defendant continued to struggle with daily consumption of alcohol and Percocet. The judge found "there's a risk to commit another offense . . . because this defendant has . . . zero remorse . . . [and a] lack of acknowledgment for what this [c]ourt finds and the jury found that he committed this offense." The judge thus gave aggravating factor three "some weight under the circumstances."

The judge accorded "significant weight" to aggravating factor nine (need for deterrence) because "[t]he injuries here and the overall incident that happened here there is both a general and specific deterrence that is required to stop these types of offenses."

Additionally, the judge limited aggravating factor thirteen (possession of a stolen vehicle), to the non-theft charges.

The judge applied mitigating factors seven, eleven, and fourteen. See N.J.S.A. 2C:44-1(b)(7), (11), and (14). The judge rejected mitigating factor five, N.J.S.A. 2C:44-1(b)(5), (victim's conduct induced its commission), reasoning "there [wa]s insufficient evidence within . . . the testimony that

supports that the victim in this case was the initial aggressor or . . . the victim in this case induced or facilitated its commission."

The judge also rejected mitigating factors eight, N.J.S.A. 2C:44-1(b)(8), (circumstances unlikely to reoccur) and nine, N.J.S.A. 2C:44-1(b)(9), (likelihood of reoffending), because he applied aggravating factor three, risk of re-offense, and believed defendant lacked remorse. While the judge acknowledged defendant may be "doing good things at the jail," the judge explained defendant never "realize[d] the consequences of his own actions." The judge found "there is a risk that he will commit another offense because he doesn't get it." The judge also rejected mitigating factor ten, N.J.S.A. 2C:44-1(b)(10), (affirmative response to probationary treatment) because defendant was convicted of "a NERA offense."

The judge applied mitigating factor seven (no criminal history), noting defendant had "no history of prior delinquency." In applying mitigating factor eleven (excessive hardship), the judge read a letter from defendant's mother expressing a need for defendant to be in Georgia to care for her. However, the judge gave that mitigating factor "very limited weight, because imprisonment is always going to be a hardship to family members, to loved ones, to children."

11

The judge also gave "some weight" to mitigating factor fourteen (under age twenty-six at the time of the offense). The judge explained:

> The problem that I have with mitigating factor [fourteen], this defendant obviously he served in the military. He . . . was enough of a grown man here to know right from wrong. So, . . . when you look at this mitigating factor[,] you're supposed to consider the fact that this defendant was somebody who was just immature in his age, in his thought process. I don't find that this defendant is immature or any of those things. I actually find him to be mature, that he gets it in that regard. I just don't think that somewhere in his brain is he willing to accept what actually happened here, and because of that, while I give it weight, I don't give it substantial weight.

In summarizing his sentencing findings, the judge explained "the aggravating factors and the mitigating factors [were] in balance, even though . . . there [were] more aggravating factors than mitigating factors." He noted defendant's "positive qualities," including the lack of a prior criminal record and honorable discharge from the military. However, the judge emphasized defendant "[did not] accept responsibility for what he has done."

The judge sentenced defendant to seven years of imprisonment on the aggravated assault conviction, subject to NERA. Because the sentence was subject to NERA, defendant was required to serve five years, eleven months, and sixteen days before being parole eligible.

12

Additionally, the judge sentenced defendant to the following terms of imprisonment on the other convictions: four years for possession of a weapon for an unlawful purpose; twelve months for unlawful possession of a weapon; and four years for theft of movable property. These sentences were concurrent to the seven-year NERA sentence.

On appeal, defendant raises the following arguments:

POINT I

THE PROSECUTOR'S IMPROPER COMMENTS IN SUMMATION SHIFTED THE BURDEN OF PROOF TO THE DEFENSE IN A WAY THAT THE COURT'S CURATIVE INSTRUCTION COULD NOT REMEDY.

POINT II

THE SENTENCE IS EXCESSIVE.

A. The court erred in reasoning that [defendant]'s military service reduced the weight attributable to mitigating factor 14.

B. The sentencing goal of deterrence is adequately met by imposing a minimal sentence.

C. The sentencing goal of incapacitation is adequately met by imposing a minimal sentence.

I.

We first consider defendant's argument that the judge's curative instruction regarding the burden of proof was insufficient and warrants a new trial. We disagree.

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)). "Notwithstanding the high standard to which a prosecutor is held as he or she gives an opening statement or summation, 'not every deviation from the legal prescriptions governing prosecutorial conduct' requires reversal." Id. at 408-09 (quoting Williams, 113 N.J. at 452).

"[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). It is well-settled that a prosecutor's remarks do not constitute reversible error when an objection is made and the

jury is instructed to disregard the offending remarks. See State v. R.B., 183 N.J. 308, 333-34 (2005).

The prosecutor's remarks must be considered "within the context of the trial as a whole." State v. McNeil-Thomas, 238 N.J. 256, 276 (2019) (quoting State v. Feaster, 156 N.J. 1, 64 (1998)). Consideration is given to "the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred." State v. Williams, 244 N.J. 592, 608 (2021) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). In determining whether prosecutorial misconduct denied a defendant a fair trial, "an appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Frost, 158 N.J. at 83.

A curative instruction may be sufficient to alleviate any prejudice that might result from a prosecutor's improper remark. See, e.g. State v. Jenkins, 349 N.J. Super. 464, 479 (App. Div. 2002). A trial judge may "address erroneous statements by attorneys in their closing arguments," by providing "[a] curative jury instruction . . . to remedy trial error." State v. McKinney, 223 N.J. 475, 497 (2015). When such error occurs, "the decision to provide a curative

instruction and the content of that statement is left to the discretion of the trial judge." Ibid. (citing State v. Yough, 208 N.J. 385, 397 (2011)). A proper curative instruction is "crafted to address the prejudicial aspect of the improper remarks" and "can be curative only if the judicial medicine suits the ailment." State v. Herbert, 457 N.J. Super. 490, 508 (App. Div. 2019).

Here, the prosecutor's closing statement implied to the jury that defendant had the burden of producing cellphone video evidence to prove his innocence. The judge immediately recognized the problem with the prosecutor's statement and swiftly issued a curative instruction. The judge clearly and unequivocally told the jury the State had the burden of proving defendant's guilt at all times and the burden never shifted to defendant. After directing the jurors to disregard the prosecutor's implication that defendant had an obligation to provide the cellphone videos to the police, the judge asked if the jurors understood his instruction. On the record, the judge noted each juror affirmatively nodded in response.

The judge not only issued a proper curative instruction promptly after the prosecutor completed her summation, but twice instructed the jury as to the State's burden of proof when later charging the jury. The judge reminded the jury that the defendant had no obligation to prove his innocence or provide proof

related to his innocence. We presume the jury followed the judge's instructions. State v. Loftin, 146 N.J. 295, 390 (1996). Under the circumstances, we reject defendant's assertion that the improper comment during the prosecutor's closing argument warrants a new trial.

## II.

We next consider defendant's argument that the sentence imposed was excessive. We reject this argument.

We review a sentencing court's imposition of sentence for abuse of discretion. State v. Torres, 246 N.J. 246, 272 (2021). We review sentences "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and "should not 'substitute [our] judgment for those of sentencing courts.'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)).

> Appellate courts must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'
>
> [State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

17

Our deferential standard of review applies "if the trial judge follow[ed] the Code and the basic precepts that channel sentencing discretion.'" State v. Trinidad, 241 N.J. 425, 453 (2020) (quoting Case, 220 N.J. at 65).

Trial judges have broad sentencing discretion so long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Sentencing judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence." Case, 220 N.J. at 64-65 (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)).

Regarding the judge's consideration of mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) (defendant under the age of twenty-six at the time of the offense), we discern no abuse of discretion in the minimal weight the judge assigned to this factor. The judge found defendant's service in the military at the age of twenty-three and honorable discharge reflected a greater maturity level compared to other twenty-three-year-olds.

The judge considered defendant's age, education, military service, family responsibilities, and work experience in his comprehensive analysis of the relevant statutory factors when applying and balancing the aggravating and mitigating factors. The judge found the aggravating and mitigating factors were

"in balance" and imposed a sentence in the mid-range for aggravated assault consistent with the sentencing guidelines. We discern nothing improper in the judge's sentencing of defendant based on the judge's assessment of defendant in light of defendant's life experiences.

Having reviewed the record, we are satisfied the sentencing judge made sufficient findings of fact in applying the aggravating and mitigating factors based on competent and credible evidence in the record. Additionally, the judge applied the correct sentencing guidelines under the Criminal Code and the sentence imposed does not shock the judicial conscience.

To the extent we have not specifically addressed any remaining arguments, they lack sufficient merits to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3617-22